**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 14-cr-00161-REB(s)(s)

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. GEOFFREY H. LUNN, and
2. JAIME J. BEEBE,
a/k/a Jaime J. Greene,
a/k/a Robert Perello,
a/k/a Bobby Perello,
a/k/a Robert Visconti,
a/k/a Anthony Caramanna,

Defendants.

---

SECOND SUPERSEDING INDICTMENT
18 U.S.C. §1343
18 U.S.C. §2314
18 U.S.C. §1957
18 U.S.C. §371
18 U.S.C. §981(a)(1)(C)
18 U.S.C. §982(a)(1)
18 U.S.C. §2

---

The Grand Jury charges that:

**COUNTS 1 – 26**
(Wire Fraud)

1. From at least in or about February 2010 and continuing at least through in or about March 2011, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendants,

**GEOFFREY H. LUNN, and**
**JAIME J. BEEBE,**
**a/k/a Jaime J. Greene,**
**a/k/a Robert Perello,**

**a/k/a Bobby Perello,**
**a/k/a Robert Visconti,**
**a/k/a Anthony Caramanna,**

together with and aided and abetted by others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent material pretenses, representations and promises from at least 70 investors or groups of investors located throughout the United States and in foreign countries who had invested in one or more high-yield, leveraged finance investment programs offered by and through a purported entity called "Dresdner Financial." Through such scheme, the defendants, working together and in concert with others, solicited and obtained investor funds in excess of $5.8 million, most of which funds they diverted and misappropriated for their own use or for uses not authorized by investors.

**Background**

At all times material to this Indictment:

2. Defendant GEOFFREY H. LUNN resided in Boulder and Sheridan, Colorado and held himself out as a real estate and mortgage broker and investor. WGC Group, Inc. was a Nevada corporation formed by LUNN purportedly to conduct these businesses.

3. Dresdner Financial (hereinafter,"Dresdner") was the name of a purported financial services company with offices based in Chicago, Illinois. The purported company, in a website it maintained, claimed to be a "leader in creative Commercial Financing, Bank Instruments, Bond Programs and more" and boasted of having an "extensive network of connections with the Top-50 banking institutions in the world." It claimed to sponsor and administer an assortment of investment programs offering the prospect of extraordinary, above-market returns over a short period of time, which programs centered around the acquisition, purported "monetization," and

trading of a variety of bank instruments, such as bank guarantees, standby letters of credit and medium term notes. Two of the programs were known as the "Bullet and Rocket Leveraged Financing Program" ("hereinafter, the "Bullet and Rocket Program") and the ".44 Magnum Leveraged Financing Program" (hereinafter, the ".44 Magnum Program") or by variations of these names. These and Dresdner's other investment programs were marketed by Dresdner through a network of affiliates (hereinafter, the "Dresdner affiliates") who typically focused their solicitations on persons and organizations seeking financing for various types of commercial projects.

4. Defendant JAIME J. BEEBE resided in and about Southern California and Albuquerque, New Mexico. Defendant BEEBE, using the names "Robert Perello" or "Bobby Perello," held himself out as, and led others to believe he was, the founder of Dresdner and, variously, its purported president, one of its other senior officers or one of its senior consultants. Defendant BEEBE, acting under these aliases, also purported to be the architect of Dresdner's investment programs, including the Bullet and Rocket Program and the .44 Magnum Program. Defendant LUNN was portrayed as its vice president, and defendant LUNN held himself out as being, and was known to be, one of Dresdner's officers. In truth and fact, Dresdner was not a legal entity of any type or a trade name for another company, and the purported company did not maintain recognizable offices in Chicago, Illinois, or apparently anyplace else.

**<u>The Scheme And Artifice</u>**

5. It was an object and purpose of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises for the defendants, GEOFFREY H. LUNN and JAIME J. BEEBE, together and in concert with others known and unknown to the Grand Jury, to induce individual investors and groups of investors to

provide them with money primarily by making investments in Dresdner's Bullet and Rocket and .44 Magnum Programs.

6. As part of the of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises, defendants LUNN and BEEBE, directly and through Dresdner's network of affiliates, made the following representations, both in writing and orally, to prospective investors about these programs:

a. That in exchange for an upfront payment by the investor, characterized as an "entry fee," Dresdner would lease or otherwise acquire one or more bank instruments on behalf of the investor;

b. That, in the case of the .44 Magnum Program, Dresdner would further insure the bank instruments through an "insurance wrap" obtained through an established insurance company such as Lloyd's of London;

c. That Dresdner would then "nearly simultaneously" "monetize" the instruments by providing them to a third party lender who would extend non-recourse loans on the instruments;

d. That investors would be guaranteed a certain loan-to-value on these non-recourse loans, thereby guaranteeing them certain minimum returns;

e. That because the loans were non-recourse, the funds disbursed to investors would not have to be repaid by the investors themselves; and

f. That both programs were "100% guaranteed," both in terms of their success and the actual returns being promised.

7. With respect to both programs, LUNN and BEEBE, directly and through the Dresdner affiliates, represented to investors both orally and in tables that were part of the

programs' promotional literature, that investors' actual returns would depend, in part, on the entry fee amounts that they were willing to pay; the greater the entry fee, the larger the promised return. While the timing, entry fee amounts and promised returns were changed over time as the scheme progressed, most of the investors who were solicited for the .44 Magnum Program were promised at least a guaranteed $2 million return on a minimum entry fee of $44,000 (a return of in excess of 4,000%) and were typically promised that these returns would be delivered within 10 to 12 banking days but, in no event, would the returns be beyond a month's time from receipt of the entry fee. Similar representations were made to investors solicited for the Bullet and Rocket investment programs; they were typically promised that the minimum entry fee of $10,000 would yield a $100,000 (or 1,000%) return within 10 days and that they could receive a 1,000% return within the same time span at other entry fee levels as well.   They were also told that they could realize up to 2,000% in returns on a minimum entry fee of $250,000 if they waited 30 days. And with some variations on the program, investors were even promised up to a 5,000% return on their money.

   8. As a further part of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises, defendants LUNN and BEEBE, directly and through Dresdner's network of affiliates, led investors in both programs to believe that their "entry fees" would be used by Dresdner to secure and "monetize" the bank instruments and that Dresdner and its affiliates would only earn and receive their respective fees and commissions after the instruments were obtained and "monetized" through, among other ways, using the instruments in platform trading with financial institutions.

   9. In order to further induce investors into participating in the programs, defendant LUNN would further falsely represent to them, directly and through the Dresdner affiliates, that

Dresdner and LUNN and the other principals were associated with Dresdner Bank AG, once a large, established financial institution in Germany, and that Dresdner was planning to acquire several banks to expand its operations.   In truth and fact, as defendant LUNN then well knew, neither Dresdner, he, nor any other purported principal of Dresdner had any connections to Dresdner Bank AG or any other banking institution. Nor were there any plans by LUNN or any of the other purported principals of Dresdner to purchase banks.

10.   As a further part of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises, defendants LUNN and BEEBE caused sets of agreements, assurance letters, and written instructions to be sent to individuals and groups interested in participating in these purported investments, which the prospective investors were required to execute and return to LUNN directly or through the Dresdner affiliates.   Upon executing these documents, the prospective investors were directed to wire transfer their entry fees for the programs to a bank account that defendant LUNN maintained in the name of WGC Group, Inc. with JP Morgan Chase Bank, which account LUNN oversaw and controlled.

11.   As defendants LUNN and BEEBE well knew, most, if not all, of the investor funds wire transferred to LUNN's business account were not used to secure the bank instruments promised under the Dresdner investment programs or to otherwise facilitate realizing the promised returns through the other aspects of the programs, such as obtaining "insurance wraps" and arranging for third parties to "monetize" the instruments.   Instead, as part of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises, defendants LUNN and BEEBE diverted and misappropriated virtually all of the Dresdner investors' funds in the following ways, among others:

a. Defendant LUNN making cash withdrawals and Western Union and MoneyGram money transfers totaling approximately $955,377, which funds LUNN delivered to BEEBE directly, in person or through money transfers, or to intermediaries, through money transfers, which funds BEEBE would then use for purposes unrelated to the purported investment programs;

b. Defendant LUNN, at the direction of defendant BEEBE, making payments approximating $1.43 million to a select group of Dresdner affiliates, after those affiliates started fielding complaints from investors about the mounting delays in the promised payouts and began to complain themselves about not receiving their commissions;

c. Defendant LUNN making payments exceeding $1 million to a select group of investors – which payments were characterized as partial returns on their investments – after these investors too complained about the payout delays, threatened to bring their complaints to law enforcement officials, or indicated that they would not refer new investors to the programs unless they saw returns paid on their investment;

d. Defendant LUNN, unbeknownst to BEEBE, making payments and purchases totaling approximately $848,500 to three women whom he met in Las Vegas, Nevada and who worked as professional escorts operating out of that city; and

e. Defendant LUNN using a considerable portion of the balance of investor funds to pay for personal and unrelated business expenses.

12. It was further a part of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises, that -- in order to conceal these diversions and misappropriations of investor funds, deflect investor complaints about the delays in the program payouts and to perpetuate the fraudulent scheme generally -- defendant LUNN, directly and through the Dresdner affiliates, and with defendant BEEBE's awareness and consent, continually advised investors that their payouts would take place on particular dates, only to then postpone the dates by five to seven days, or more, as the payout deadlines approached. Defendants LUNN and BEEBE, as the scheme progressed, together and separately, also concocted a series of discrete lies and excuses about the delays, including, but not limited to, the following:

      a. That the designated insurance company was behind schedule in providing the "insurance wraps" for the bank instruments;

      b. That there were delays in moving necessary funds into or out of the United States;

      c. That transactions involved in facilitating the programs' payouts were pending approval by the United States Federal Reserve or the United States Securities and Exchange Commission;

      d. That there were other holds placed on Dresdner's funds by banks and governments;

      e. That the Dresdner principals were working through tax reporting issues;

      f. That "paymasters" and others responsible for transactions facilitating the programs' payouts were taking longer than expected to complete their work;

    g. That some of the delays were due to "bank holidays"; and

h. That lawsuits that certain groups of investors were beginning to bring were holding up the process.

13. As a part of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises, as the delays in the promised investor payouts mounted, defendants LUNN and BEEBE, directly and through the Dresdner affiliates, also began to promise investors even greater returns to compensate investors for the delays. As the promised payout deadlines approached, in order to deflect payout demands, they also encouraged investors to "roll over" their expected returns into additional investments in the Dresdner programs, explaining to investors that doing so would also enhance their returns and allow them to achieve their investment goals with more leverage.

14. It was further a part of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises, that, in marketing the investment program to later investors, defendants LUNN and BEEBE and the Dresdner affiliates concealed that the .44 Magnum and Bullet and Rocket programs were not functioning as advertised in their written promotions about the programs and that none of the earlier investors had actually received any funds based on returns from investments in these programs. Defendants LUNN and BEEBE concealed from these investors as well that virtually none of the earlier investors' funds had been used as promised under the investment programs but had been diverted and misappropriated instead.

**Wire Transmissions In Execution of the Scheme**

15. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to

defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, the defendants,

**GEOFFREY H. LUNN, and**
**JAIME J. BEEBE,**
**a/k/a Jaime J. Greene,**
**a/k/a Robert Perello,**
**a/k/a Bobby Perello,**
**a/k/a Robert Visconti,**
**a/k/a Anthony Caramanna,**

did knowingly transmit and cause to be transmitted in interstate commerce, and did aid and abet others to cause to be transmitted, from or to a place within the State of Colorado to or from the places outside of Colorado, by means of wire communications, certain writings, signals and sounds, representing and constituting the following:

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 1 | 6/3/10 | Telephone conversation between LUNN and investor C.A. |
| 2 | 7/28/10 | Email from LUNN to investor J.B. stating "[j]ust received the wire" |
| 3 | 8/4/10 | Email from LUNN to investor J.B. "returning the relevant documents, duly executed" |
| 4 | 8/23/10 | Email from LUNN to investor S.H. apologizing again for the delay and explaining that "the funder has been inundated with new applications," as program draws to a close |
| 5 | 8/27/10 | Email from LUNN to investor S.H. stating "[i]t will fund, if you would rather not wait any longer I will gladly arrange a refund of the entry fee" |
| 6 | 8/27/10 | Telephone conversation between LUNN and investor C.A. |
| 7 | 10/4/10 | Email from LUNN to investor J.B. stating that "the issue with the insurance wrap appears to have been resolved" and that both her deals will now be done simultaneously |
| 8 | 12/13/10 | Email from LUNN to investor C.A. stating that a wire transfer of funds has been set up but "with this sort of amount it is not an instant process" |
| 9 | 1/13/11 | Email from LUNN to investor C.A. stating that his bank |

| | | |
|---|---|---|
| | | has confirmed that the hold on the funds in his account "will be released in 5-7 banking days, and your wire disbursed for the full amount" |
| 10 | 1/18/11 | Email from LUNN to investor-affiliate Darlene Bishop stating that the "Mag cleints [sic] … will be taken care of by Friday of this week, or Tuesday at the latest." |
| 11 | 1/31/11 | Email from LUNN to investor S.H. stating that "the payout will be in excess of the 2M guarantee" |
| 12 | 2/2/11 | Email from LUNN to investor S.H. stating that LUNN has "other funds coming in, which will allow me to take care of the people such as yourself, who have been waiting a long time for funding" |
| 13 | 4/1/10 | Email from BEEBE, using bobby@dresdnerfinancial.com, to LUNN, forwarding "Alicia Watsn (Affiliate Package)" |
| 14 | 5/24/10 | Email from BEEBE, using bobby@dresdnerfinancial.com, to LUNN instructing LUNN to replace the "Word documents" with the attached final versions of investor finance agreements and related documents |
| 15 | 5/26/10 | Email from BEEBE, using bobby@dresdnerfinancial.com, to LUNN, referencing and attaching ".44 Magnum Leveraged Finance Agreement & Procedures (.pdf)" |
| 16 | 9/6/10 | Email from BEEBE, using bobby@dresdnerfinancial.com, to LUNN forwarding"O'Brien's Certificates & Documents," and a message from potential investor AH , with comment previously provided documents still need to be completed |
| 17 | 10/7/10 | Email from BEEBE, using bobby@dresdnerfinancial.com, to LUNN attaching ".44 Magnum – entry, advance, pay-out & commission chart |
| 18 | 5/6/10 | Western Union electronic communication on behalf of LUNN instructing payment of $1,000 in currency be made available to affiliate W.W. in Michigan (MTCN #257-883-9692) |
| 19 | 5/13/10 | Email from BEEBE, using bobby@dresdnerfinancial.com, to LUNN and affiliate R.A. concerning ".44 Magnum – Lease & monetization program overview" |
| 20 | 6/3/10 | Western Union electronic communication on behalf of LUNN instructing payment of $500 in currency be made available to C.R. in New Mexico (MTCN #386-709-1590) |
| 21 | 7/27/10 | Western Union electronic communication on behalf of LUNN instructing payment of $500 in currency be made available to L.G. in New Mexico (MTCN # 958-618-8380) |
| 22 | 12/1/10 | Western Union electronic communication on behalf of |

| | | |
|---|---|---|
| | | LUNN instructing payment of $800 in currency be made available to C.R. in California (MTCN #681-301-1800) |
| 23 | 12/2/10 | Western Union electronic communication on behalf of LUNN instructing payment of $800 in currency be made available to an individual identified as S.R. in California (MTCN #965-312-6568) |
| 24 | 1/31/11 | Email from LUNN to investor-affiliate Darlene Bishop acknowledging receipt of wire confirmation for investor M.KC |
| 25 | 3/3/11 | Telephone conversation between LUNN and investor E.T. |
| 26 | 3/14/11 | Email from LUNN to investor S.H., with copy to investor-affiliate Darlene Bishop, regarding "Double payout" and indicating that the amount is "1.5M" |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS 27 - 37**
(Interstate Transportation of Fraudulently Obtained Property)

16. The allegations contained in paragraphs 1 through 15 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

17. On or about the dates enumerated as to each count below, in the State and District of Colorado, and elsewhere, the defendants,

**GEOFFREY H. LUNN, and**
**JAIME J. BEEBE,**
**a/k/a Jaime J. Greene,**
**a/k/a Robert Perello,**
**a/k/a Bobby Perello,**
**a/k/a Robert Visconti,**
**a/k/a Anthony Caramanna,**

did knowingly transport and cause to be transported in interstate commerce, from Boulder, Colorado to the places identified below, money, in the form of United States currency in the approximate amounts specified below, knowing that the said money included at least $5,000 in funds that had been converted and taken by fraud:

| **COUNT** | **DATE** | **AMOUNT** | **DESTINATION** |
|---|---|---|---|
| 27 | 4/18/10 | $15,574 | Albuquerque, New Mexico |
| 28 | 5/2/10 | $20,000 | Albuquerque, New Mexico |
| 29 | 5/9/10 | $15,000 | Albuquerque, New Mexico |
| 30 | 5/23/10 | $14,223 | Albuquerque, New Mexico |
| 31 | 6/5/10 | $40,120 | Albuquerque, New Mexico |
| 32 | 7/14/10 | $15,000 | Albuquerque, New Mexico |
| 33 | 7/16/10 | $22,000 | Las Vegas, Nevada |
| 34 | 7/30/10 | $37,843 | Las Vegas, Nevada |
| 35 | 8/31/10 | $40,760 | Los Angeles, California |
| 36 | 9/22/10 – 9/23/10 | $65,982 | Los Angeles, California (via Las Vegas, Nevada) |
| 37 | 10/19/10 - 10/21/10 | $80,000 | Los Angeles, California (via Las Vegas, Nevada) |

All in violation of Title 18, United States Code, Sections 2314 and 2.

**COUNTS 38 - 44**
(Monetary Transactions in Criminally Derived Property)

18. The allegations contained in paragraphs 1 through 15 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

19. On or about the dates alleged below as to each Count, in the State and District of Colorado, and elsewhere, the defendant,

**GEOFFREY H. LUNN,**

did knowingly engage and attempt to engage in the following monetary transactions affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, which property was derived from a specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, as described and set forth and alleged in Counts 1 through 26 of this Indictment:

| Count | Date | Transaction |
|---|---|---|
| 38 | 10/20/2010 | Wire transfer of $60,000 from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Wachovia Bank, NA/Wells Fargo Bank, NA account ending in -7077, in the name of B.G., an individual |
| 39 | 10/26/2010 | Wire transfer of $35,000 from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Wells Fargo Bank, NA account ending in -0705, in the name of D.K., an individual |
| 40 | 11/3/2010 | Wire transfer of $35,000 from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Branch Banking and Trust Co. account ending in -5372, in the name of T.B., an individual |
| 41 | 11/16/10 | Wire transfer of $79,491 from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Bank of America, NA account ending in -5328, in the name of Hendrick Automotive |
| 42 | 12/23/10 | Wire transfer of $30,000 from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Wachovia Bank, NA/Wells Fargo Bank, NA account ending in -7077, in the name of B.G., an individual |
| 43 | 12/23/10 | Wire transfer of $30,000 from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Wells Fargo Bank, NA account ending in -4459, in the name of D.K., an individual |
| 44 | 12/23/10 | Wire transfer of $30,000 from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Branch Banking and Trust Co. account ending in -5372, in the name of T.B., an individual |

In violation of Title 18 of the United States Code, Sections 1957 and 2.

## COUNT 45

(Conspiracy to Commit Wire Fraud and to Transport Money Taken by Fraud)

20. The allegations contained in paragraphs 1 through 15 and 17 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

21. Beginning in or about February 2010 and continuing through in or about March

2011, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendants,

**GEOFFREY H. LUNN, and**
**JAIME J. BEEBE,**
**a/k/a Jaime J. Greene,**
**a/k/a Robert Perello,**
**a/k/a Bobby Perello,**
**a/k/a Robert Visconti,**
**a/k/a Anthony Caramanna,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, and with other persons, to commit the following offenses against the United States:

a. wire fraud, in violation of Title 18, United States Code, Section 1343; and

b. transportation of money taken by fraud in interstate commerce, in violation of Title 18, United States Code, Section 2314.

**Overt Acts**

22. In furtherance of the conspiracy and to effect the objects thereof, one or more overt acts were carried out by at least one co-conspirator in the State and District of Colorado and elsewhere, which overt acts included the following:

a. The wire transmissions set forth in Counts 1 through 26 of this Indictment are incorporated herein and re-alleged as though restated as individual overt acts done in furtherance of the conspiracy.

b. The acts of interstate transportation of money set forth in Counts 27 through 37 of this Indictment are incorporated herein and re-alleged as though restated as individual overt acts done in furtherance of the conspiracy.

c. On or about October 7, 2010, defendant BEEBE, using the email address bobby@dresdnerfinancial.com, sent an email to Dresdner affiliate A.Z., with a copy of the email

to Dresdner affiliate J.P., concerning a Roll-Over Request Agreement for the .44 Magnum Program.

  d. On or about October 8, 2010, defendant BEEBE, using the email address bobby@dresdnerfinancial.com, sent an email to an individual at email address d.heritage101@gmail.com, identifying its subject matter as "Greetings" and warning the recipient about using content from the Dresdner Financial website.

  e. On or about October 11, 2010, defendant BEEBE, using the email address bobby@dresdnerfinancial.com, sent an email to Dresdner affiliate W.R. responding to a request to provide an update concerning programs that are being promoted.

  f. On or about September 22, 2010, defendant BEEBE, using the email address bobby@dresdnerfinancial.com, sent an email to Dresdner affiliates D.B. and W.R. attaching a .44 Magnum Roll-Over Request form.

  g. On or about February 26, 2010, defendant LUNN made a $25,000 cash withdrawal in Colorado from the WGC Group, Inc. bank account at JP Morgan Chase Bank.

  h. On or about July 17, 2010, defendant LUNN made a $50,000 cash withdrawal in Nevada from the WGC Group, Inc. bank account at JP Morgan Chase Bank.

  i. On or about July 31, 2010, defendant LUNN made a $65,000 cash withdrawal in Nevada from the WGC Group, Inc. bank account at JP Morgan Chase Bank.

  j. On or about August 31, 2010, defendant LUNN made a $20,000 cash withdrawal from the WGC Group, Inc. bank account at JP Morgan Chase Bank at the bank's Beverly Hills Downtown Branch in California.

  k. On or about September 22, 2010, defendant LUNN made a $50,000 cash withdrawal in Nevada from the WGC Group, Inc. bank account at JP Morgan Chase Bank.

  l. On or about October 21, 2010, defendant LUNN made a $75,500 cash withdrawal in California from the WGC Group, Inc. bank account at JP Morgan Chase Bank.

  m. On or about October 27, 2010, defendant Lunn caused a wire transfer of $50,000 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to PNC Bank account ending in -5324, in the name of Private Capital Consulting LLC.

  n. On or about November 23, 2010, defendant Lunn caused a wire transfer of $12,500 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Compass Bank NA account ending in -3520, in the name of JonDar Enterprises LLC.

  o. On or about February 1, 2011, defendant Lunn caused a wire transfer of $12,500 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Compass Bank NA account ending in -3520, in the name of JonDar Enterprises LLC.

  p. On or about October 27, 2010, defendant Lunn caused a wire transfer of $50,000 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Bank of America NA account ending in -1898, in the name of Key Private Capital LLC.

  q. On or about October 15, 2010, defendant Lunn caused a wire transfer of $7,000 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Wells Fargo NA account ending in -2308, in the name of Nevada Capital Markets, Inc.

  r. On or about November 18, 2010, defendant Lunn caused a wire transfer of $35,000 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Wells Fargo NA account ending in -2308, in the name of Nevada Capital Markets, Inc.

  s. On or about November 2, 2010, defendant Lunn caused a wire transfer of $12,500 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Vystar Credit Union account ending in -6258, in the name of First Capital Funding Group.

t. On or about November 18, 2010, defendant Lunn caused a wire transfer of $62,500 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Vystar Credit Union account ending in -6258, in the name of First Capital Funding Group.

u. On or about November 19, 2010, defendant Lunn caused a wire transfer of $12,500 to be made from JP Morgan Chase Bank Account ending in -4313, in the name of WGC Group, Inc., to Vystar Credit Union account ending in -6258, in the name of First Capital Funding Group.

All in violation of Title 18, United States Code, Section 371.

**Notice of Forfeiture Allegation**

23. The allegations contained in Counts 1 through 45 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) (wire fraud); and Title 18, United States Code, Section 982(a)(1) (money laundering).

24. Upon conviction of the violation alleged in Counts 1 through 37, and 45 of this Indictment involving violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 2314, the defendants,

**GEOFFREY H. LUNN, and**
**JAIME J. BEEBE,**
**a/k/a Jaime J. Greene,**
**a/k/a Robert Perello,**
**a/k/a Bobby Perello,**
**a/k/a Robert Visconti,**
**a/k/a Anthony Caramanna,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7) and 1961, any and all of each defendant's right, title and interest in all property, real or personal, constituting and derived from any proceeds the defendants obtained

directly and indirectly as a result of the commission of such offenses.

25. Upon conviction of the violations alleged in Counts 38 through 44 of this Indictment involving violations of Title 18, United States Code, Section 1957, the defendant,

**GEOFFREY H. LUNN,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all of the defendant's right, title and interest in all property, real or personal, involved in or traceable to property involved in such offenses.

26. The property subject to forfeiture as alleged in paragraphs 24 and 25, includes, but is not limited to:

   a. A 2011 Land Rover, Range Rover Sport Supercharged, Vehicle Identification Number (VIN): SALSH2E42BA268370;

   b. Funds seized from Branch Banking and Trust Company (BB&T) account #1440, in the name of an individual identified herein as T.A.B.;

   c. A money judgment in the amount of proceeds obtained through the wire fraud scheme and the interstate transportation of fraudulently obtained property and by the defendants, less proceeds obtained from directly forfeitable assets; and

   d. With respect to defendant LUNN, a money judgment in the amount of property involved in the commission of violations of Title 18, United States Code, Section 1957, less proceeds obtained from directly forfeitable assets.

27. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

              A TRUE BILL:

              Ink signature on file in Clerk's Office
              FOREPERSON

JOHN F. WALSH
UNITED STATES ATTORNEY

By: s/Kenneth M. Harmon
KENNETH M. HARMON
Assistant United States Attorney
U.S. Attorney's Office
1225 17th Street, Suite 700
Denver, CO   80202
Telephone: (303) 454-0100
Fax:   (303) 454-0402
E-mail:   kenneth.harmon@usdoj.gov