**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 14-cr-00161-REB-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2. JAIMIE J. BEEBE,

    Defendant.

---

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

**Blackburn, J.**

The matter before me is the **Letter** [#270],[1] filed September 15, 2020, by defendant, Jaimie Beebe, which I construe as a motion for compassionate release.[2] The government filed a response, also under restriction ([#275], filed October 29, 2020), but despite opportunity to do so, Mr. Beebe did not submit a reply within the time provided (*see* **Minute Order** [#272], filed September 28, 2020). I have jurisdiction to consider Mr. Beebe's request for sentence modification under 18 U.S.C. § 3582(c). Having considered carefully the motion, the record, and the apposite law, I deny the motion.

---

[1] "[#270]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] Because Mr. Beebe is proceeding pro se, I construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys. *See* **Erickson v. Pardus**, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); **Andrews v. Heaton**, 483 F.3d 1070, 1076 (10th Cir. 2007); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing **Haines v. Kerner**, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96, 30 L.Ed.2d 652 (1972)).

Pursuant to his plea agreement with the government [#145], Mr. Beebe pled guilty to one count of wire fraud in association with a fraudulent high-yield investment scheme. He was sentenced to a term of imprisonment of 108 months, to be followed by three years of supervised release. He was ordered to pay over $3.8 million in restitution, a $150,000 fine, and a $100 special assessment.

As I interpret Mr. Beebe's letter, he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). One of the purposes of the First Step Act was to "increas[e] the use and transparency of compassionate release," *see* First Step Act, 132 Stat. at 5239, by expanding the universe of persons who could seek such relief. Whereas previously, only the Director of the Bureau of Prisons could file a motion compassionate release, *United States v. Gutierrez*, 2019 WL 1472320 at *1 (D.N.M. Apr. 3, 2019), now a defendant himself may seek such relief from the court, but only "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," 18 U.S.C. § 3582(c)(1)(A).

Mr. Beebe filed an administrative request for compassionate release with the warden of FCI-Sheridan on or about August 24, 2020. (**Letter**, Exh. 1.) As thirty days have passed since that time, Mr. Beebe has exhausted his administrative remedies. Thus, the only question is whether the other requirements warranting an exercise of the court's discretion to grant compassionate release have been met. [3]

---

[3] As the Tenth Circuit recently affirmed, Mr. Beebe is not entitled to a hearing on his motion. *See United States v. Mannie*, 971 F.3d. 1145, 1155-57 (10th Cir. 2020).

2

The First Step Act did not change the substantive standards governing compassionate release.  A proposed sentence reduction still must be "supported by: (1) extraordinary and compelling reasons; (2) applicable policy statements issued by the Sentencing Commission[;] and (3) the factors set forth in [18 U.S.C. §] 3553(a)." **United States v. Willis**, 382 F.Supp.3d 1185, 1187 (D.N.M. 2019) (quoting 18 U.S.C. § 3582(c)(1)(A)(i))(internal quotation marks omitted).

Regarding the first condition, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).  In response, the Commission issued USSG §1.B1.13. Under this policy statement, the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," it determines that "[e]xtraordinary and compelling reasons warrant the reduction" and that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." **USSG** §§1B1.13(1)(A) & (2).[4]

The policy statement sets forth specific examples of circumstances which may be considered extraordinary and compelling, including the defendant's terminal illness or debilitating medical condition, advanced age, or compelling family circumstances such

---

[4] Although the policy statement contemplates that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons," **USSG** §1B1.13, cmt. n.4, the Tenth Circuit has recently applied this guidance in a case in which the defendant filed his motion *pro se*, **see United States v. Saldana**, 807 Fed. Appx. 816, 819 (10th Cir. March 6, 2020), and "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it," **United States v. Perez**, 2020 WL 1180719 at *2 (D. Kan. March 11, 2020). **See also United States v. Redd**, 444 F.Supp.3d 717, 725 (E.D. Va. 2020) (by "authoriz[ing] courts to act independently of the BOP Director, upon a defendant's motion, once administrative remedies are exhausted . . . the First Step Act effectively amended U.S.S.G. § 1B1.13 by eliminating the requirement that a sentence reduction under § 3582(c)(1)(A) be 'upon motion of the Director of Bureau of Prisons,' as U.S.S.G. § 1B1.13 requires.").

3

as the death or incapacitation of the sole caregiver for the defendant's minor children. None of these categories apply to Mr. Beebe. Although he complains of a number of physical ailments, Mr. Beebe has not shown that his Hepatitis-C diagnosis has resulted in a terminal, as opposed to a merely chronic, medical condition. *See* **BOP Program Statement** 5050.50 ¶ 3.a. at 4 (Jan. 17, 2019)  (available at: https://www.bop.gov/PublicInfo/execute/policysearch?todo=query#) (last accessed December 2, 2020) (BOP will consider reduction in sentence for inmate who suffers from an incurable disease and whose life expectancy is 18 months or less).  Nor has Mr. Beebe substantiated that he suffers from a debilitating medical condition within the meaning of the policy statement. *See id*. ¶ 4 at 5 ("debilitating medical condition" connotes the inmate is either "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours").[5]

Although the policy statement also includes a catch-all provision by which compassionate release may be warranted for "an extraordinary and compelling reason other than, or in combination with, the reasons described in" the other subdivisions, **USSG** §1B1.13, cmt. n.1(D), Mr. Beebe does not satisfy the requirements of this

---

[5] Although Mr. Beebe alleges he is confined to his bed 12 to 18 hours a day due to pain and weakness associated with digestive issues caused by an antibiotic prescription, his medical records demonstrate that he repeatedly has refused to cooperate with efforts to assess his condition.  (*See* **Gov't Resp. App.**, Exh. 1 at 28, 30.)  His most recent medical examination was "unremarkable."  (**Gov't Resp. App.**, Exh. 2 at 3-5.)  I therefore must conclude that his alleged ailments, singly or in combination, do not constitute a debilitating medical condition.

provision either.⁶  To be sure, the existence of the COVID-19 pandemic can be described as "extraordinary" insofar as it is "[b]eyond what is usual, customary, regular, or common." ***United States v. Rodriguez***, 451 F.Supp.3d 392, 401 (E.D. Pa. 2020) (quoting Black's Law Dictionary, *Extraordinary* (11ᵗʰ ed. 2019)) (internal quotation marks omitted).  However, because the apposite test is stated in the conjunctive, the dangers presented by the pandemic – which impact us all, worldwide – also must be "compelling" in Mr. Beebe's particular circumstances.  ***See United States v. Raia***, 954 F.3d 594, 597 (3ʳᵈ Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." ).⁷  A need is "compelling" when it is "so great that irreparable harm or injustice would result if it is not met." ***Rodriguez***, 451 F.Supp.3d at 401 (quoting Black's Law Dictionary, *Compelling Need* (11ᵗʰ ed. 2019)) (internal quotation marks omitted).

It is Mr. Beebe's burden to prove that his medical condition creates extraordinary and compelling reasons warranting a sentence reduction.  ***United States v. Ng Lap***

---

⁶ The Bureau of Prisons has promulgated a list of nonexclusive factors it uses to determine whether "other" extraordinary and compelling reasons exist.  These include:  the defendant's criminal and personal history; the nature of the offense; any disciplinary infractions; the length of sentence and the amount of time served; the defendant's current age and age at the time of offense and sentencing; the defendant's release plans; and"[w]hether release would minimize the severity of the offense." **BOP Program Statement** 5050.50 at 12 (2019) (available at:  https://www.bop.gov/policy/progstat/ 5050_050_EN.pdf ) (last accesses December 2, 2020).  ***See also Saldana***,807 Fed. Appx. at 819.

⁷ ***See also United States v. Bolze***, 460 F.Supp.3d 697, 708 (E.D. Tenn. 2020) ("[T]he COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population."); ***United States v. Binraymond***, 2020 WL 2110577 at *2 (S.D. Ohio May 4, 2020) (defendant "failed to show that COVID-19 pose[d] a particular risk to him"); ***United States v. Numann***, 2020 WL 1977117 at *3 (D. Alaska April 24, 2020) ("[T]he risks of COVID-19 have pervaded all corners of society and the possibility of contraction does not independently justify compassionate release.").

***Seng***, 2020 WL 2301202 at *3 (S.D.N.Y. May 8, 2020).  ***See also United States v. Jones***, 836 F.3d 896, 899 (8th Cir. 2016) ("It is the defendant's burden to establish that he warrants a § 3582(c)(2) reduction."); ***United States v. Butler***, 970 F.2d 1017, 1026 (2nd Cir.) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."), ***cert. denied***, 113 S.Ct. 480 (1992).  Although Mr. Beebe "suspects" he is suffering from any number of severe ailments which he has "self-diagnosed,"[8] the only medical condition with which he definitively has been diagnosed which warrants consideration here is his long-standing diagnosis of Hepatitis-C.  While chronic liver disease, especially cirrhosis of the liver, may increase a person's risk of severe illness from COVID-19 (***see*** Centers for Disease Control and Prevention, *What To Know About Liver Disease and COVID-19* (May 5, 2020) (available at:  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html) (last accessed:  December 2, 2020), Hepatitis-C infection does not always lead to chronic liver disease (***see*** Peggy Peck, *Hepatitis C Infection May Not Always Lead to Chronic Liver Disease* (Jan. 19, 2000) (available at: https://www.webmd.com/hepatitis/ news/20000119/hepatitis-c-chronic-liver-disease) (last accessed:  December 2, 2020), and there is no evidence that Hepatitis-C itself increases the risk of developing severe illness from COVID (Centers for Disease Control and Prevention, *What To Know About Liver Disease and COVID-19*, *Are people with hepatitis B or hepatitis C at higher risk for COVID-19 than other people?* (May 5,

---

[8] Although Mr. Beebe expressed concern to the warden that he might be suffering from "cancer; renal failure; pancreatic insufficient (EPI); [or] kidney or severe liver disease" (**Letter**, Exh. 1 at 1), his most recent medical examination was "unremarkable" (**Gov't Resp. App.**, Exh. 2 at 3-5).

2020) (available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html) (last accessed: December 2, 2020).

Yet even if Mr. Beebe's medical condition did place him at slightly higher risk of serious illness from COVID-19, a sentence reduction still is unwarranted in this case. Even where all other preconditions to consideration of a sentence reduction are satisfied, Mr. Beebe still must establish both that he does not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and that the factors set forth in 18 U.S.C. § 3553(a) warrant a sentence reduction. **USSG** §§1B1.13(1)(A) & (2). He satisfies neither of these conditions.

It is clear to this court that Mr. Beebe continues to present a danger to the community.[9] Although Mr. Beebe's offense was not violent or drug-related , the concept

---

[9] In making the determine, the court must consider:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including —
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

of what constitutes a danger to the community "may, at least in some cases, encompass pecuniary or economic harm." **United States v. Reynolds**, 956 F.2d 192, 192 (9th Cir.1992). **See also United States v. Provenzano**, 605 F.2d 85, 95 (3rd Cir. 1979) ("[C]ourts are not confined in such cases to considering only harms involving an aura of violence. . . . [A] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger[.]"); **United States v. Madoff**, 586 F.Supp.2d 240, 252 (S.D.N.Y. 2009) (citing cases); S. REP. NO. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("[T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").

Mr. Beebe's crimes involved a far-ranging scheme which ultimately defrauded at least 72 investors of more than $5.8 million in just one year.  Mr. Beebe and his co-defendant created a fictitious entity which they named to appear as if it were associated with an established German bank to convince investors of the legitimacy of the scheme. Mr. Beebe used numerous aliases to thwart efforts to identify him and set up offshore accounts to hide his ill-gotten gains.  Yet as the government points out, statements in Mr. Beebe's request to the warden sound suspiciously like the bogus claims he made in connection with the fraudulent scheme which underlies his conviction.[10]

---

[10]  For example, Mr. Beebe claims that if released, he intends to use "one of my corporate entities" to "reinstate top-notch medical insurance coverage" through "William-Russell (out of London)." William Russell provides international health insurance for people living and working abroad. (*See* https://www.william-russell.com/) (last accessed:  December 2, 2020.)  Although Mr. Beebe

By contrast to his confident predictions of his post-release endeavors, Mr. Beebe's actual conduct while in prison gives the court no reason to infer that he has any inclination to redeem himself.  Mr. Beebe has incurred no less than 16 disciplinary infractions during his period of incarceration, for conduct that includes possession of a razor (while in the Special Housing Unit), stealing food, lying to BOP staff, refusing to obey orders, and possession of alcohol.  (**Gov't Resp. App.**, Exh. 4.)  Despite the substantial restitution and fines imposed against him, Mr. Beebe has refused to participate in the BOP's Financial Responsibility Program, which would direct a portion of his prison earnings to payment of his court-ordered financial obligations (**Gov't Resp. App.**, Exh. 5), and has paid only $25 toward his special assessment.  Although he completed a Drug Abuse Education course and a typing course early in his time at the BOP (**Letter**, Exh. 1 at 26-27), the most recent review of his Individualized Reentry Plan noted that Mr. Beebe had "not participated in any classes since October 2018," was "dropped from his GED class and [was] . . . not making satisfactory progress towards completion," and had made "no progress toward completion of recommended goals." (**Letter**, Exh. 1 at 19.)  All of these factors indicate to this court that Mr. Beebe's time in prison has not led him to re-examine the failings that got him there, and I thus conclude that he continues to present a danger to the community.

---

apparently fancies himself an ex-patriot (*see* **PSIR** ¶ 110 at 32 [#213], filed February 10,2017), even if he were granted compassionate release, he most assuredly would not be permitted to live abroad during his three-year term of supervised release.  In addition, Mr. Beebe suggests he has "plenty" of otherwise unspecified employment 'opportunities'" in the "technology sector[]" if he is released and maintains he is filing patent claims in both this country and abroad "on certain technology-based intellectual properties with substantial global market value." (**Letter**, Exh. 1 at 9.)  Given the sketchiness of the details of his employment history Mr. Beebe provided in connection with the presentence investigation, these prospects likewise appear dubious.  (*See* **PSIR** ¶¶ 131-137 at 35-36 [#213], filed February 10, 2017.)

9

Nor can I find the applicable § 3553(a) factors warrant an exercise of my discretion to reduce his sentence. ***Dillon v. United States***, 560 U.S. 817, 827, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010). These factors include, but are not limited to (1) the nature and circumstances of the offense and the history and characteristics of Mr. Beebe; (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense (b) afford adequate deterrence to criminal conduct; and (c) protect the public from further crimes of Mr. Beebe; (3) the sentencing ranges under the guidelines; (4) the pertinent policy statements of the Sentencing Commission; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §§ 3553(a)(1), (2), (4), (5), and (6).

Despite a rather significant history of felony convictions (***see* Presentence Investigation Report** ¶ 76 at 25, ¶¶ 81-82 at 26-27, ¶ 84 at 27 [#213], field February 10, 2017), Mr. Beebe was sentenced at the bottom of the applicable Guideline range in this case. That sentence appropriately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment to Mr. Beebe; affords adequate deterrence to criminal conduct; and protects the public from further crimes of Mr. Beebe. A lesser sentence would not accomplish these goals and is unwarranted. Also, as noted above, the nature and circumstances of the offense and the history and characteristics of Mr. Beebe do no support any conclusion other than that his extant sentence is wholly appropriate and necessary to accomplish the goals of sentencing.

For these reasons, Mr. Beebe's motion for compassionate release must be denied.

**THEREFORE, IT IS ORDERED** that the request for compassionate release contained in the **Letter** [#270], filed September 15, 2020, by defendant, Jaimie Beebe, is denied.

Dated December 4, 2020, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge